NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HENRY GOODELMAN,<br><br>    Plaintiff,<br><br> v.<br><br>TICKETMASTER, et al.,<br><br>    Defendants. | Civil Action No.: 24-10980<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court are two motions to dismiss filed by defendants Ticketmaster, LLC ("Ticketmaster") (ECF No. 39) and New Meadowlands Stadium Co., LLC ("NMSC") (ECF No. 40) and a motion for a preliminary injunction (ECF No. 41), a motion for leave to file a motion for partial summary judgment (ECF No. 73), and a motion for leave to file a supplemental brief regarding his motion at ECF No. 73 (ECF No. 75) filed by plaintiff Henry Goodelman ("Plaintiff"). For the reasons set forth below, Defendants' motions are **GRANTED** and Plaintiff's motions are **DENIED**.

**I. BACKGROUND**

This case arises from a ticket sale for "the Oasis reunion concerts" that occurred during the Jewish holiday of Rosh Hashanah, during which "Orthodox Jews are religiously prohibited from using electricity, handling money, or accessing the internet." ECF No. 1 at 16. Plaintiff, an Orthodox Jew, alleges that he could not "participat[e] in the presale on October 3, 2024, or the general sale on October 4, 2024" due to his observance. *Id.* The concerts are scheduled for August 31 and September 1, 2025, at MetLife Stadium. *Id.* Plaintiff alleges that by scheduling the ticket

sale during Rosh Hashanah, Defendants Ticketmaster, NMSC, Live Nation Entertainment, Inc.,[1] OpenstageIt, Ltd., and Ignition Music Limited (together, "Defendants") discriminated against him. *Id.*

Plaintiff brought this action by way of a motion for an order to show cause in the Superior Court of New Jersey, Bergen County on November 2, 2024, against Ticketmaster, NMSCO, Live Nation Entertainment, Inc., OpenstageIt, Ltd., and Ignition Music Limited. *See id*. The Superior Court denied Plaintiff's motion without prejudice for failure to set forth a factual basis evidencing immediate or irreparable harm. ECF No. 44-1 at 9. On December 9, 2024, Ticketmaster removed Plaintiff's action to this Court. ECF No. 1. Plaintiff submitted an amended complaint ("FAC") on June 9, 2025, after the Court granted his motion for leave to file an amended complaint. ECF Nos. 33, 35. The FAC asserts claims under Title II of the Civil Rights Act of 1964 and the New Jersey Law Against Discrimination ("NJLAD"). FAC at 2. On June 23, 2025, Defendants Ticketmaster and NMSCO filed the instant motions to dismiss the FAC. ECF Nos. 39, 40. On June 26, 2025, Plaintiff filed a motion for a preliminary injunction regarding Defendants' ticket sales policies and procedures. ECF No. 41. On August 18, 2025, Plaintiff filed a motion for leave to file a motion for partial summary judgment. ECF No. 73. On August 20, 2025, Plaintiff filed a motion for leave to file a supplemental brief addressing correspondence he received from Defendants. ECF No. 75.

## II. <u>LEGAL STANDARD</u>

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief

---

[1] Ticketmaster notes that it was "also improperly pled as Live Nation Entertainment, Inc." ECF No. 39 at 1.

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating the sufficiency of a complaint, a court must "draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of 'further factual enhancement,'" will not withstand dismissal. *Iqbal*, 556 U.S. at 678 (citations and brackets omitted).

### III.    DISCUSSION

#### A.    Title II of the Civil Rights Act of 1964

Plaintiff first alleges religious discrimination under Title II of the Civil Rights Act of 1964. Title II prevents discrimination by places of public accommodation. *See* 42 U.S.C. § 2000a(a); *Jabri v. Gonzalez*, No. 22-7448, 2024 WL 4719492, at *8 (D.N.J. Nov. 7, 2024). To state a claim under Title II, a plaintiff must plausibly allege that he "(1) is a member of a protected class; (2) attempted to contract for services and afford himself [or herself] the full benefits and enjoyment of a public accommodation; (3) was denied the full benefits or enjoyment of a public accommodation; and (4) such services were available to similarly situated persons outside [his or] her protected class who received full benefits or were treated better." *Lopez v. Pec*, No. 23-23012, 2025 WL 25560, at *17 (D.N.J. Jan. 3, 2025) (alterations in original) (quoting *Jabri*, 2024 WL 4719492, at *8).

"Additionally, before bringing a claim under Title II, a plaintiff, pursuant to Section 2000a-3(c), must first notify a state or local government entity authorized to grant relief from the alleged discrimination or to institute criminal proceedings." *Jabri*, 2024 WL 4719492, at *8 (citing 42 U.S.C. § 2000a-3(c)). "No civil action may be brought under Title II before thirty days after written notice of the matter to the appropriate state or local entity." *Livingstone v. Hugo Boss*

*Store, Atl. City*, No. 21-1971, 2021 WL 3910149, at *5 (D.N.J. Sept. 1, 2021) (citing 42 U.S.C. § 2000a-3(c)). "Compliance with Section 2000a-3(c) is a mandatory jurisdictional prerequisite and 'a Title II plaintiff must demonstrate that he or she has satisfied the notice requirement before a federal court has subject matter jurisdiction to hear the plaintiff's claim.'" *Waiters v. Republic Bank*, No. 24-5728, 2024 WL 1928331, at *2 (D.N.J. May 2, 2024) (quoting *Livingstone*, 2021 WL 3910149, at *5).

Plaintiff does not allege that he notified the relevant state or local government authority before filing his civil action, as required by section 2000a-3(c). Plaintiff appears to concede this point in his opposition brief, stating that he "does not contest the procedural threshold under Title II and consents to dismissal of the Title II claim without prejudice, if necessary." ECF No. 42 at 7. Given that Plaintiff has not alleged that he filed the required notice under section 2000a-3(c), Plaintiff's Title II claim is procedurally barred, and must be dismissed.

### B. NJLAD

Plaintiff's second claim alleges religious discrimination under the NJLAD. The NJLAD states, in relevant part, that "[a]ll persons shall have the opportunity to . . . obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of . . . creed." N.J. Stat. Ann. § 10:5-4.[2] "To state a claim under the NJLAD for discrimination by a place of public accommodation, a Plaintiff must: (1)

---

[2] The NJLAD does not explicitly prohibit discrimination based on religion. *See* N.J. Stat. Ann. § 10:5-4. However, the NJLAD does prohibit discrimination based on "creed," and courts have interpreted "creed" to encompass a "formal statement of religious belief." *See, e.g.*, *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001) (applying the NJLAD to a religious discrimination claim); *Islam v. City of Bridgeton*, 804 F. Supp. 2d 190, 200 (D.N.J. 2011) (same); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 180 (3d Cir. 1999) ("According to the Webster's II New Riverside University Dictionary (1984), creed is defined as a 'formal statement of religious belief' or a 'confession of faith.'"); *see also Streeter v. Brogan*, 274 A.2d 312, 315 (N.J. Ch. Div. 1971).

4

demonstrate that he is a member of a protected class; (2) show that the defendant's actions were motivated by discrimination; and (3) demonstrate that others outside the protected class did not suffer similar adverse actions." *Santiago v. Elchebli*, No. 20-650, 2021 WL 4473179, at *6 (D.N.J. Sept. 30, 2021); *see also Partovi v. Felician Coll.*, No. A-1961-09T1, 2011 WL 867275, at *8 (N.J. Super. Ct. App. Div. Mar. 15, 2011). "'[C]onclusory allegations of discrimination [cannot] satisfy the pleading requirements' for an NJLAD public accommodation claim." *Florentino v. City of Newark*, No. 19-21055, 2020 WL 5105291, at *14 (D.N.J. Aug. 31, 2020) (quoting *Partovi*, 2011 WL 867275, at *8).

The FAC falls short on the second prong by failing to "allege facts sufficient to create an inference that discrimination motiv[at]ed Defendants' actions." *Santiago*, 2021 WL 4473179, at *6. Plaintiff alleges that "Defendants' facially neutral ticket sale timing policies resulted in a disproportionate impact on Orthodox Jewish individuals" and that this "impact was foreseeable, avoidable, and discriminatory—even absent explicit intent." FAC at 2. By describing Defendants' conduct as "facially neutral" and "absent [of] explicit intent," Plaintiff concedes that they did not intend to discriminate against Orthodox Jews, as required by the NJLAD. *Id.* And although Plaintiff describes Defendants' conduct as a "systematic" and "ongoing" practice that could amount to implicit intent, the FAC does not support these conclusory allegations, nor do the allegations amount to intent. *Id.* at 4.

Plaintiff's arguments to the contrary are unavailing. Plaintiff points to *Turner v. Wong* for the assertion that the NJLAD does not require allegations of intentional discrimination to sustain a viable claim. 832 A.2d 340, 347 (N.J. App. Div. 2003). But *Turner* does not stand for this assertion. *Turner* involved a storekeeper who called a patron, the plaintiff, a racial slur several times in a loud voice when the plaintiff complained about the quality of the food, compared her

5

unfavorably to white customers, and ordered her to leave the store. *Id.* at 355–56. The court held that a jury could reasonably conclude these facts constitute religious discrimination under the NJLAD. *Id.* at 356. As an initial matter, the facts in *Turner* are clearly incomparable to those here, given that the FAC contains no allegations of religious animus towards Plaintiff of any kind. But more to the point, the decision never suggests that discriminatory intent is not required under the NJLAD, as Plaintiff contends. In fact, the court noted that "[i]n interpreting the [NJ]LAD, the federal law [Section 1981] has consistently been considered for guidance" and "[t]o state a claim under 1981 a plaintiff must establish that the defendant's actions were racially motivated and purposefully discriminatory." *Id.* at 354, 356. Thus, if anything, *Turner* undercuts Plaintiff's argument, rather than supports it, by indicating that discriminatory intent is required under the federal statutes that guide interpretation of the NJLAD. For these reasons, Plaintiff fails to state a claim under the NJLAD.

Accordingly, **IT IS** on this 21st day of August, 2025,

**ORDERED** that Defendants' motions to dismiss (ECF Nos. 39, 40) are **GRANTED**, and Plaintiff's FAC (ECF No. 35) is dismissed without prejudice; and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Order to submit an amended complaint that addresses the deficiencies identified in this Order. Insofar as Plaintiff submits a further amended complaint, he shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2); and it is further

**ORDERED** that Plaintiff's motion for a preliminary injunction (ECF No. 41) is **DENIED** as moot; and it is further

**ORDERED** that Plaintiff's motion for leave to file a motion for partial summary judgment (ECF No. 73) and supplemental motion (ECF No. 75) are **DENIED** as moot.

**SO ORDERED.**

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**
