**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

HENRY GOODELMAN,

               Plaintiff,

    v.

TICKETMASTER, et al.,

               Defendants.

</td><td>

Civil Action No.: 24-10980

**OPINION & ORDER**

</td></tr>
</table>

**CECCHI, District Judge.**

Before the Court are five motions to dismiss Pro Se Plaintiff Henry Goodelman's ("Plaintiff") Second Amended Complaint (ECF No. 77) ("SAC"), filed by defendants Ticketmaster, LLC ("Ticketmaster") (ECF No. 79), New Meadowlands Stadium Co., LLC ("NMSC") (ECF No. 80), OpenStageIT, Ltd. ("OpenStage") (ECF No. 109), Live Nation Entertainment, Inc. ("Live Nation") (ECF No. 110), and Ignition Music Limited (ECF No. 126) (collectively, "Defendants").  Plaintiff also filed a motion for leave to file a preliminary injunction (ECF No. 112).  For the reasons set forth below, Defendants' motions are **GRANTED** and Plaintiff's motion is **DENIED**.

I.      **BACKGROUND**

This case arises from an online ticket sale for the Oasis reunion tour.  The sale occurred during the Jewish holiday of Rosh Hashanah.  *See generally* SAC.  On Rosh Hashanah, Orthodox Jews, like Plaintiff, refrain from using "electricity, handling money, or accessing the internet" in accordance with their religious beliefs.  *Id.* at 3.  As such, Plaintiff alleges that he could not participate in either the presale or general sale due to his observance.  *Id.*  The concerts were scheduled for August 31 and September 1, 2025, at MetLife Stadium.  *Id.*  Plaintiff emailed

Defendants the day the presale was announced—September 30, 2024—asking for a "religious accommodation" so that he could participate in the sale. *Id.* Plaintiff asserts Defendants did not provide an accommodation. *Id.* Plaintiff alleges that Defendants intentionally discriminated against him because they "were explicitly notified in advance" that having the ticket sale on Rosh Hashanah would prevent him from participating and proceeded without providing an accommodation. *Id.*

Plaintiff first filed suit in the Superior Court of New Jersey, Bergen County in November 2024. ECF No. 1. Plaintiff filed an order to show cause for preliminary injunctive relief which the Superior Court denied without prejudice for failure to set forth a factual basis evidencing immediate or irreparable harm. ECF No. 44-1 at 9. Defendants removed the case to this Court in December 2024. ECF No. 1. This Court then permitted Plaintiff to amend his Complaint and Plaintiff filed his First Amended Complaint ("FAC"). ECF Nos. 33, 35. Defendants filed motions to dismiss which the Court granted but permitted Plaintiff to amend and file the instant SAC. ECF No. 76. Plaintiff now asserts two counts. First, Plaintiff contends that Defendants violated the New Jersey Law Against Discrimination ("NJLAD") by discriminating against Plaintiff in a place of public accommodation and second contends that Defendants aided and abetted NJLAD violations. SAC at 9–10. The five motions to dismiss before the Court then followed.

## II.    <u>LEGAL STANDARD</u>

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating the sufficiency of a complaint, a court must "draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation

omitted).  Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of 'further factual enhancement,'" will not withstand dismissal.  *Iqbal*, 556 U.S. at 678 (citations and brackets omitted).

III.    **DISCUSSION**

    A.    **Count I:  Religious Discrimination by a Place of Public Accommodation**

Plaintiff alleges religious discrimination under the NJLAD.  Under the NJLAD, "[a]ll persons shall have the opportunity to . . .  obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of . . . creed."  N.J. Stat. Ann. § 10:5-4.[1]  To "state a claim under the NJLAD for discrimination by a place of public accommodation, a Plaintiff must:  (1) demonstrate that he is a member of a protected class; (2) show that the defendant's actions were motivated by discrimination; and (3) demonstrate that others outside the protected class did not suffer similar adverse actions." *Santiago v. Elchebli*, No. 20-650, 2021 WL 4473179, at *6 (D.N.J. Sept. 30, 2021); *see also Partovi v. Felician Coll.*, No. A-1961-09T1, 2011 WL 867275, at *8 (N.J. Super. Ct. App. Div. Mar. 15, 2011).  "'[C]onclusory allegations of discrimination [cannot] satisfy the pleading requirements' for an NJLAD public accommodation claim."  *Florentino v. City of Newark*, No. 19-21055, 2020 WL 5105291, at *14 (D.N.J. Aug. 31, 2020) (quoting *Partovi*, 2011 WL 867275, at *8).

---

[1] As the Court explained in its Opinion and Order dismissing the FAC, the NJLAD "does not explicitly prohibit discrimination based on religion."  ECF No. 33 at 4.  However, courts have interpreted the NJLAD's prohibition against discrimination based on creed to include a prohibition against religious discrimination.  *Id.* (collecting cases); *see also, e.g.*, *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 282 (3d Cir. 2001) (applying the NJLAD to a religious discrimination claim).

The core of Plaintiff's allegations is that "after being placed on explicit notice . . . Defendants deliberately chose not to explore or implement reasonable accommodations." SAC at 4. This, Plaintiff contends, was a "deliberate act of discrimination, or at minimum deliberate indifference to the rights of Orthodox Jews." *Id.* at 3.[2] Plaintiff's SAC, like the FAC, falls short of alleging that Defendants' actions were motivated by discrimination. *See* ECF No. 33 at 5–6.

To determine whether a defendant's actions were motivated by discrimination in the public accommodation discrimination context, courts focus on "whether [the] defendant acted with an actual or apparent design to discourage present or future use of the public accommodation by plaintiff on account of [their] protected status." *Turner v. Wong*, 832 A.2d 340, 356 (N.J. Super. Ct. App. Div. 2003); *see also Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 431 F. Supp. 3d 518, 531–32 (D.N.J. 2019) ("[B]ehavior may be actionable [under the NJLAD] if it is outrageous enough to imply a design to discourage an individual's use of that public accommodation on account of her protected status."). Courts have found the possibility of discriminatory motivation when, for example, "a resort owner allegedly stated, 'I don't want those kinds of people here,' and 'you shouldn't bring those of kinds of people here.'" *Epps v. DGMB Casino, LLC*, No. A-0406-

---

[2] To the extent Plaintiff alleges that Defendants intentionally discriminated by scheduling the sale on Rosh Hashanah in the first instance, Plaintiff has failed to state a claim. Plaintiff has not plausibly alleged that Defendants intentionally scheduled the sale on Rosh Hashanah to discriminate against Orthodox Jews. In the SAC, Plaintiff twice describes the "initial scheduling" of the sale on Rosh Hashanah as "inadvertent." SAC at 3. Inadvertence does not constitute intent. *See* Inadvertence, Black's Law Dictionary (12th ed. 2024) ("An accidental oversight"). Plaintiff also alleges that once Defendants proceeded with the sale as scheduled after being informed of the holiday, Defendants "transform[ed] what might otherwise appear neutral into intentional exclusion." SAC at 4. This undercuts Plaintiff's allegations of intentional discrimination at the onset in two ways. It alleges that Defendants were unaware of the religious conflict when they initially scheduled the ticket sale on Rosh Hashanah and it concedes that the decision to have the sale on Rosh Hashanah was neutral. This cannot support an inference of intentional discrimination. *See Santiago*, 2021 WL 4473179, at *6 (Plaintiff must "allege facts sufficient to create an inference that discrimination motiv[at]ed Defendants' actions").

24, 2026 WL 60248, at *5 (N.J. Super. Ct. App. Div. Jan. 8, 2026) (discussing *Franek v. Tomahawk Lake Resort*, 754 A.2d 1237, 1242 (N.J. Super. Ct. App. Div. 2000)).   In another example, a court found that a defendant store owner may have been motivated by discrimination when she used racial slurs to an African American patron who refused to pay for a stale donut. *Turner*, 832 A.2d at 356.

Conversely, courts have dismissed discrimination claims when a plaintiff provides conclusory allegations of discriminatory motivation.  For example, in *Morris v. T.D. Bank*, the plaintiff alleged that the defendant violated the NJLAD because plaintiff, who was African American, was mistakenly identified as a bank robber after the actual bank robber had already left the bank.  185 A.3d 215, 221 (N.J. Super. Ct. App. Div. 2018).  The court affirmed the claim's dismissal because there was "nothing in the record, except plaintiff's supposition that the bank's employee was racially motivated." *Id.*  Similarly, in *N.W. v. Greater Egg Harbor Regional High School District*, the court affirmed summary judgment on an NJLAD claim when a school security guard used a racial slur one time when interacting with a student.  No. A-5079-16T4, 2018 WL 6332247, at *4 (N.J. Super. Ct. App. Div. Dec. 5, 2018).  The court noted that there was no "evidence defendant acted with an actual or apparent design to discourage plaintiff from attending the school." *Id.*

Here, Plaintiff's claims are unlike those in cases in which courts have found a discriminatory motive.  There are no allegations of explicit religious animus or remarks, or that Defendants' conduct was "outrageous enough to imply" that they wanted to "discourage" Plaintiff from purchasing tickets because of his religion. *Jones*, 431 F. Supp. 3d at 532.  Rather, Plaintiff's allegations are akin to those cases in which courts have dismissed allegations as conclusory.  That is, Plaintiff's allegations that Defendants did not accommodate his religious needs after he

5

requested an accommodation do not provide any further factual support to suggest this decision was motivated by Plaintiff's religion. For example, there is nothing to suggest that Defendants have accommodated people of other religions but refused to do so here. Accordingly, the SAC must be dismissed because Plaintiff does not sufficiently allege that Defendants acted with a discriminatory motive.

Plaintiff's opposition brief and the cases he relies on are unavailing. He argues that discriminatory intent "is present when a party, after receiving notice of discriminatory impact, refuses to act and instead enforces the exclusionary policy." ECF No. 85 at 2. The cases Plaintiff cites, however, do not support this proposition. Plaintiff relies on *Slohoda v. United Parcel Service, Inc.* which was an employment discrimination case based on marital status and did not discuss how notice of a discriminatory impact amounts to discriminatory motive. 504 A.2d 53 (N.J. Super. Ct. App. Div. 1986). *Richter v. Oakland Board of Education* involved a school that did not accommodate a teacher's requests to eat lunch earlier in the day due to her diabetes. 252 A.3d 161, 165–66 (N.J. 2021). The issue was whether a plaintiff is "required to establish an adverse employment action . . . to be able to proceed with an [NJ]LAD failure-to-accommodate disability claim." *Id.* at 166. *Richter*, too, does not stand for the proposition that action taken after notice amounts to intentional discrimination in a public accommodation claim. Moreover, *Richter* involved an inapplicable area of the law—disability accommodations in the employment context. *See Franek*, 754 A.2d at 1242 (trial court erred when it made "overgeneralized use of specific principles" used in employment discrimination cases in a public accommodation discrimination case). Finally, Plaintiff references *Estate of Komninos*. ECF No. 85 at 2. The citation provided, however, links to an appeal from the denial of Social Security benefits under a case named *Hall v. Berryhill* from the Western District of New York. *See* No. 15-619, 2018 WL 1071508 (W.D.N.Y.

Feb. 27, 2018).  Plaintiff uses the same case for the proposition that "Courts have long held that discriminatory intent may be inferred where a facially neutral policy is knowingly applied in a manner that foreseeably excludes a protected class."  ECF No. 85 at 2.  That case, however, does not address the NJLAD, let alone a standard for finding discriminatory intent.  In sum, Plaintiff has not sufficiently stated a claim for a violation of the NJLAD.

### B.    Count II:  Aiding and Abetting Unlawful Discrimination

Plaintiff also alleges that Defendants aided and abetted unlawful discrimination.  SAC at 10.  "The NJLAD prohibits any person . . . to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under the act."  *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, 431 F. Supp. 3d 488, 514 (D.N.J. 2019).  To establish an aiding and abetting claim under the NJLAD, a plaintiff "must demonstrate that the defendants: (1) aided another in performing a wrongful act that caused an injury; (2) were aware of their role in the illegal activity at the time it was committed; and (3) knowingly and substantially assisted with the main violation."  *Yuli v. Lakewood Bd. of Educ.*, Civ. No. 13-4617, 2014 WL 5308187, at *9 (D.N.J. Oct. 16, 2014).  "An individual cannot be held liable for aiding and abetting unless there is an underlying violation of the NJLAD."  *Greater Egg*, 431 F. Supp. 3d. at 514.  Because, as discussed above, Plaintiff has failed to plead a violation of the NJLAD, he has not pled an NJLAD claim under an aiding and abetting theory.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' motions are granted, and the SAC is dismissed without prejudice.

Accordingly, **IT IS** on this 28th day of May 2026,

**ORDERED** that Defendants' motions to dismiss (ECF Nos. 79, 80, 109, 110, 126) are granted, and Plaintiff's SAC (ECF No. 77) is dismissed without prejudice; and it is further

**ORDERED** that Plaintiff shall have thirty (30) days from entry of this Opinion and Order to submit an amended complaint that addresses the deficiencies identified in this Opinion.  Insofar as Plaintiff submits a further amended complaint, he shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2); and it is further

**ORDERED** that Plaintiff's motion for leave to file a preliminary injunction (ECF No. 112) is **DENIED** as moot.

**SO ORDERED.**

*s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**